1  **Lewis Roca Rothgerber Christie LLP**
   201 East Washington Street, Suite 1200
2  Phoenix, AZ 85004-2595
   Telephone: 602.262.5311

3  **Ryan D. Pont** (State Bar No. 033391)
   Direct Dial: 602.262.5313
   Direct Fax: 602.734.3769
4  Email:  rpont@lewisroca.com

5  **Kyle W. Kellar** (*Pro hac vice*)
   Direct Dial: 626.683.4590
   Direct Fax: 626.577.8800
6  Email:  kkellar@lewisroca.com

   Attorneys for Plaintiffs
7

8                              UNITED STATES DISTRICT COURT

9                                    DISTRICT OF ARIZONA

10 | Wavve Americas, Inc., a Delaware corporation, | Case No. 2:23-cv-01819-MTL |
   | Plaintiff, | **PLAINTIFF'S MOTION FOR LEAVE TO SERVE DEFENDANT BY ALTERNATIVE MEANS** |
   | vs. | |
   | Unknown Registrant Of Kokoatv.Net; Unknown Registrant Of Kokoa.Tv; And Unknown Registrant Of Vidground.Com, | |
   | Defendants. | |

        Plaintiff wavve Americas, Inc. ("wA" or "Plaintiff"), having now learned the true

identity and location of the registrant of KOKOA.TV, KOKOATV.NET, and

VIDGROUND.COM, respectfully requests that the Court permit wA to serve the First

Amended Complaint (filed concurrently herewith) via email pursuant to Fed. Rule Civ.

Proc. 4(f)(3).

        wA filed the instant lawsuit on August 30, 2023, listing the unknown registrants of

KOKOA.TV, KOKOATV.NET, and VIDGROUND.COM (the "Domain Names") as

defendants. (Dkt. No. 1). In response to wA's third-party discovery against NameCheap,

Inc. ("NameCheap"), the registrar responsible for the Domain Names, wA learned that

each of the Domain Names is owned by Tumi Max, an individual residing in Thailand.

122375457.1

*See* Declaration of Kyle W. Kellar In Support of wA's Motion for Leave to Serve Defendant by Alternative Means ("Kellar Decl."), ¶ 2 (filed concurrently herewith). wA timely filed its First Amended Complaint replacing the "doe" defendants with Tumi Max. wA now requests that the Court permit wA to serve Defendant via email pursuant Fed. Rule Civ. Prov. 4(f)(3) so that this lawsuit can efficiently proceed.

I. **LEGAL PRINCIPLES**

Fed. Rule Civ. Proc. 4(f) provides that:

> an individual ... may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>     (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>     (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>     (C) unless prohibited by the foreign country's law, by:
>       (i) delivering a copy of the summons and of the complaint to the individual personally; or
>       (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> (3) by other means not prohibited by international agreement, as the court orders.

The Ninth Circuit, in *Rio Properties, Inc v. Rio Intern. Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002), stated that "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." Indeed, "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief'" and "is merely one means among several which enables service of process on an international defendant." *Id*. at 1015 (quoting *Forum Fin. Group, LLC v. President & Fellows of*

*Harvard College*, 199 F.R.D. 22, 23 (D. Me. 2001)). To avoid any doubt, the Ninth Circuit clarified that "we hold that Rule 4(f)(3) is an equal means of effecting service of process under the Federal Rules of Civil Procedure, and we commit to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." *Id*. at 1016.

Even when permitted by the Rules, "a method of service of process must also comport with constitutional notions of due process." *Id*. In other words, "the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id*. at 1016–17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## II.  ARGUMENT

This case revolves entirely around infringements of wA's Intellectual Property rights on the Internet via three interrelated websites—KOKOATV.NET, KOKOA.TV, and VIDGROUND.COM. The owner of the Domain Names, and now the only Defendant in this case, Tumi Max, is apparently an individual residing in Thailand. (Kellar Decl., ¶¶ 2–3). Accordingly, and to properly and efficiently serve Defendant, wA requests that the Court permit wA to serve Defendant via email pursuant to Fed. Rule Civ. Proc. 4(f)(3).

First, Thailand is not a signatory to the Hague Convention. *See* Status Table: Hague Convention (available at https://www.hcch.net/en/instruments/conventions/status-table/?cid=17); *Mongkol Muay Thai Corp. v. JG (Thailand) Co. Ltd.*, Case No. 22-cv-00506-BAS-KSC, 2023 WL 5599613, at *3 (S.D. Cal. Aug. 29, 2023) ("As mentioned

above, Thailand is not a signatory to the Hague Convention."). Thus, service on Defendant via email is permitted under Rule 4(f)(3). *See Id.*; *Kyjen Co., LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Uninc. Assocs. Identified on Sch. A to the Compl.*, No. 23 Civ. 612 (JHR), 2023 WL 2330429, at *2 (S.D.N.Y. Mar. 2, 2023) (find that "service by electronic means is permitted for the ... [d]efendants … located in ... Thailand"); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (finding alternative service by email upon defendant in Thailand not prohibited by international agreement and authorizing such service under Rule 4(f)(3)).

Second, service on Defendant by email is reasonably calculated to apprise Defendant of this litigation. As mentioned above, this litigation revolves entirely around infringements occurring on the Internet via Defendant's websites. Thus, emailing Defendant at the email address he or she self-provided in connection with registering those same websites is reasonably calculated to reach Defendant. Indeed, in registering the Domain Names, Defendant was required to provide NameCheap with a valid email address, which was then required to be actively verified by Defendant by clicking a responsive link sent to that email address. *See* ICANN's Whois Verification Process (available at

https://www.namecheap.com/support/knowledgebase/article.aspx/9305/5/icanns-whois-verification-process/) ("When a **new domain** is registered, we will immediately send an email to the Registrant email address specified for the domain." ... "You must verify the email address by clicking on the link within **15 calendar days** after registration. If you do

not verify it within 15 calendar days, the domain will be suspended, and the DNS of the domain name will be changed.") (emphasis in original).  NameCheap similarly informs domain name registrants, such as Defendant, "you understand that it is important for you to regularly monitor email sent to the email address associated with your account and WHOIS contact information because, among other reasons, if a dispute arises regarding a domain name(s) or other Service(s), you may lose your rights to the domain name(s) or your right to receive the Service(s) if you do not respond appropriately to an email sent in conjunction therewith."  NameCheap Registration Agreement (available at https://www.namecheap.com/legal/domains/registration-agreement/).  Thus, there is substantial assurances that Defendant owns and is monitoring the email address associated with the Domain Names at issue herein.  There is no apparent similar process for verifying Defendant's physical address, which may or may not be valid.

Accordingly, because Defendant self-provided his or her email address to NameCheap *and* verified it in the process of registering the Domain Names, service via email is not only reasonably calculated to provide Defendant with actual notice of this lawsuit but is the most likely method to achieve this end.  See *Facebook,* 2012 WL 1038752, at *2 (holding that "service by email appears to be not only reasonably calculated to provide actual notice to the Foreign Defendants but the method most likely to apprise the Foreign Defendants of the action").

**III.    CONCLUSION**

 For the above reasons, wA respectfully requests that the Court permit it to serve Defendant via email at tumi993354@protonmail.com pursuant to Fed. Rule Civ. Proc. 4(f)(3).

Dated: September 13, 2023.

                                        Respectfully submitted,

                                        LEWIS ROCA ROTHGERBER CHRISTIE LLP

                                        By: /s/ Ryan D. Pont
                                                Ryan D. Pont
                                          *Attorneys for Plaintiff Wavve Americas, Inc.*