**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Telephone: 602.262.5311

**Ryan D. Pont** (State Bar No. 033391)
Direct Dial: 602.262.5313
Direct Fax: 602.734.3769
Email:   rpont@lewisroca.com

**Kyle W. Kellar** (*Pro hac vice*)
Direct Dial: 626.683.4590
Direct Fax: 626.577.8800
Email:   kkellar@lewisroca.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Wavve Americas, Inc., a Delaware corporation, | Case No. 2:23-cv-01819-MTL |
| Plaintiff, | **PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT TUMI MAX** |
| vs. | |
| Tumi Max, an individual, | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................7

II.   BACKGROUND ........................................................................................................7

    A.    wA's KOCOWA® Service and Intellectual Property Rights ................................7

        1.    wA's Trademark Rights ..............................................................................8

        2.    wA's Exclusive Rights in Copyrighted Works ...........................................8

    B.    Defendant's Infringing Conduct .........................................................................9

    C.    Defendant's Default ...........................................................................................11

III.  ARGUMENT ...........................................................................................................12

    A.    wA is Entitled to Default Judgment Against Defendant Tumi Max ...................12

        1.    The Court Has Jurisdiction ......................................................................12

        2.    The *Eitel* Factors Strongly Favor Default Judgment ..............................14

            a)    The First, Fifth, Sixth, and Seventh *Eitel* Factors .........................15

            b)    The Fourth *Eitel* Factor ..................................................................15

            c)    The Second and Third *Eitel* Factors...............................................15

                (1)    Counts I and IV: Trademark Infringement and Unfair Competition..............................................................16

                (2)    Count II: Cybersquatting.....................................................18

                (3)    Count III: Copyright Infringement.....................................19

                    (a)    The Copyrighted Works Need Not Be Registered.......................................................................20

                    (b)    wA Has Standing .................................................21

                    (c)    United States Copyright Law Is Applicable To Defendant's Acts........................................23

                (4)    Count V: Tortious Interference with Business Expectancy.......................................................................24

    B.    wA Is Entitled To Its Requested Remedies........................................................24

        1.    wA is Entitled to a Permanent Injunction ...............................................25

        2.    wA is Entitled to KOKOA.TV and KOKOATV.NET .............................26

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

122738309.4

IV.    CONCLUSION ................................................................................................26

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

**LEWIS ROCA**

122738309.4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldabe v. Aldabe,*
  616 F.2d 1089 (9th Cir. 1980)..........................................................................7, 9

*Alpha Phoenix Industries v. Scinternational Inc.,*
  No. CV-12-1848-PHX-SMM, 2013 WL 5814850 (D. Ariz., Oct. 29, 2013)...........................19

*Applied Info. Scis. Corp. v. eBAY, Inc.,*
  511 F.3d 966 (9th Cir. 2007)..................................................................................11

*Atlatl Group LLC v. Unknown Parties,*
  No. CV-20-01199-PHX-DJH,
  2023 WL 2596100 (D. Az. March 21, 2023)...........................................7, 9, 10, 11

*Bell v. Wilmott Storage Servs., LLC,*
  12 F.4th 1065 (9th Cir. 2021) .....................................................................14

*Bhasin v. Pathak,*
  No. EDCV 13-00293-VAP,
  2013 WL 1871508 (C.D. Cal. May 3, 2013) .......................................................12

*Crunchyroll, Inc. v. Pledge,*
  No. C 11-2334..................................................................................16, 17, 18

*DaimlerChrysler v. The Net, Inc.,*
  388 F.3d 201 (6th Cir. 2004)............................................................................13

*Debell Windows Systems, Inc. v. Dabella Exteriors, LLC,*
  Case No. 3:20-cv-00420-MMD-WGC,
  2020 WL 5632958 (D. Nev. Sept. 21, 2020) ........................................................12

*Dish Network L.L.C. v. Fraifer,*
  No. 8:16-CV-2549-T-60CPT,
  2020 WL 1515938 (M.D. Fla. Jan. 31, 2020) ...................................................17

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.,*
  749 F. Supp. 2d 1038 (N.D. Cal. 2010) ..............................................................10

*DSPT Int'l, Inc. v. Nahum,*
  624 F.3d 1213 (9th Cir. 2010).........................................................................13

*eBay Inc. v. Mercexchange,*
  LLC, 547 U.S. 388 (2006) ...............................................................................20

*Eitel v. McCool,*
  782 F.2d 1470 (9th Cir. 1986)..................................................................9, 10, 19

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

122738309.4

- iii -

*Fair Housing of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002)............................................................................9

*Fornix Holdings LLC v. Pepin*,
  No. CV-22-01275-PHX-DWL,
  2023 WL 4488976 (D. Az. July 12, 2023).....................................................10, 20

*Fornix Holdings LLC v. Unknown Party*,
  No. CV-22-00494-PHX-DLR,
  2023 WL 6295014 (D. Az. Sept. 27, 2023) ..........................................................9

*Fornix Holdings LLC v. Unknown Party*,
  No. CV-22-01942-PHX-DJH,
  2023 WL 4031961 (D. Az. June 15, 2023) .........................................................14

*Geddes v. United Fin. Grp.*,
  559 F.2d 557 (9th Cir. 1977).............................................................................9

*Hansen v. Integrity Assets LLC*,
  No. 2:21-cv-03994-ODW,
  2021 WL 5999317 (C.D. Cal. Dec. 20, 2021) .....................................................11

*ICON Health & Fitness Inc. v. pro-form.com*,
  No. CV-15-01981-PHX-BSB,
  2017 WL 4797794 (D. Ariz. Sept. 12, 2017).......................................................13

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
  No. 16CV1318GBDBCM, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017) .............................15

*Kinsley Tech. Co. v. Ya Ya Creations, Inc.*,
  No. 2:20-CV-04310-ODW, 2022 WL 3908831 (C.D. Cal. Aug. 30, 2022).....................11, 20

*Liaigre, Inc. v. California Furniture Collection, Inc.*,
  No. SACV1901160JAKKESX, 2022 WL 18278600 (C.D. Cal. Oct. 6, 2022)................16, 17

*Million v. Pindernation Holdings LLC*,
  No. CV-23-00072-PHX-MTL, 2023 WL 2813684 (D. Az. April 5, 2023).......................7, 10

*MPD Accessories B.V. v. Urban Outfitters*,
  No. 12 CIV. 6501 LTS KNF, 2014 WL 2440683 (S.D.N.Y. May 30, 2014)....................16

*Nicklaus Companies LLC v. Bryan Hepler Golf LLC*,
  No. CV-18-01748-PHX-ROS, 2019 WL 1227198 (D. Az. March 15, 2019) .....................21

*One Indus., LLC v. Jim O'Neal Distributing*,
  578 F.3d 1154 (9th Cir. 2009)..........................................................................12

*PepsiCo, Inc. v. Cal. Sec. Cans.*,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002) ........................................................10, 20

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

122738309.4

*Radio Television Espanola S.A. v. New World Entm't, Ltd.*,
   183 F.3d 922 (9th Cir. 1999) ...........................................................................................16, 17

*Rearden LLC v. Rearden Com., Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ...............................................................................................11

*Righthaven LLC v. Hoehn*,
   716 F.3d 1166 (9th Cir. 2013) .........................................................................................14, 15

*Sennheiser Electronic Corp. v. Evstigneeva*,
   Case No. CV 11-7884 GAF, 2012 WL 13012384 (C.D. Cal. Sept. 27, 2012) ..........................7

*Seoul Broadcasting System Int'l, Inc. v. Young Min Ro*,
   784 F. Supp. 2d. 611 (E.D. Va. 2011) .....................................................................................18

*Shropshire v. Canning*,
   809 F. Supp. 2d 1139 (N.D. Cal. 2011) ...................................................................................18

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F.3d 881 (9th Cir. 2005) (en banc) ..................................................................................16

*Sound N Light Animatronics Co. v. Cloud B, Inc.*,
   No. CV1605271BROJPR, 2017 WL 3081685 (C.D. Cal. Apr. 7, 2017) .................................18

*Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*,
   883 F.3d 904 (D.C. Cir. 2018) ...............................................................................................19

*TeleVideo Sys., Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) ...................................................................................................7

*In re Tuli*,
   172 F.3d 707 (9th Cir. 1999) ....................................................................................................7

*Zekelman Indus. Inc. v. Marker*,
   No. CV-19-02109-PHX-DWL, 2020 WL 1495210 (D. Az. Mar. 27, 2020) ...........................10

**Statutes**

15 U.S.C. § 1114(1)(a) ...............................................................................................................11

15 U.S.C. §§ 1116 ..................................................................................................................2, 20

15 U.S.C. § 1121 .........................................................................................................................7

15 U.S.C. § 1125 ...........................................................................................2, 7, 8, 13, 14, 21

17 U.S.C. § 101 ..........................................................................................................................16

17 U.S.C. § 204(a) .....................................................................................................................16

17 U.S.C. § 411(a) ...............................................................................................................15, 16

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

17 U.S.C. § 501(b) .............................................................................................................16

17 U.S.C. § 502 ...................................................................................................................2

28 U.S.C. § 1331 .................................................................................................................7

28 U.S.C. § 1338 .............................................................................................................7, 8

28 U.S.C. § 1367(a) ............................................................................................................8

28 U.S.C. § 1391 .................................................................................................................9

**Other Authorities**

Fed. R. Civ. Proc. 4(f)(3) ...................................................................................................9

Fed. R. Civ. Proc. 54(c) .....................................................................................................7

Fed. R. Civ. Proc. 55 ......................................................................................................2, 7

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

**LEWIS ROCA**

122738309.4

## I.   **INTRODUCTION**

Plaintiff wavve Americas, Inc. ("Plaintiff" or "wA") originally filed this lawsuit against the unknown registrants of three domain names—KOKOATV.NET, KOKOA.TV, and VIDGROUND.COM—on August 30, 2023.  (Dkt. No. 1).  After expedited discovery directed to NameCheap, Inc., the registrar of record for these domain names, the owner of these domain names was revealed to be the same individual, Tumi Max of Bangkok, Thailand ("Defendant" or "Tumi Max").  (Dkt. No. 12; Dkt. No. 13-37 (Exhibit AK to the First Amended Complaint)).  wA promptly filed the operative First Amended Complaint (Dkt. No. 13 ("Complaint" or "FAC")) replacing the "unknown registrant" defendants with Tumi Max and subsequently sought leave of Court to serve Tumi Max via email, which was granted (Dkt. No. 18).

Despite being properly served with the First Amended Complaint and Summons on September 22, 2023, Defendant has failed to make an appearance in this case, respond to the FAC, or otherwise contact Plaintiff.  (*See* Dkt Nos. 12, 13, and 15).  The Clerk entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a) on October 17, 2023.  (Dkt. No. 23).  Plaintiff now seeks entry of default judgment against Defendant pursuant to Federal Rule of Civil Procedure 55(b)(2) and the issuance of a permanent injunction against Defendant and transfer of ownership of Defendant's KOKOATV.NET and KOKOA.TV domain names to Plaintiff pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C) and 17 U.S.C. § 502.

## II.   **BACKGROUND**

### A.   **wA's KOCOWA® Service and Intellectual Property Rights**

wA is the leading distributor of Korea-originating television programming and feature films in the United States, which it streams to viewers through its popular KOCOWA® service.  (FAC, ¶¶11–12).  wA's KOCOWA® service is an over-the-top (OTT) media service that distributes (i.e., streams) media content directly to viewers via (i.e., over the top of) the viewer's existing Internet connection.  (*Id.*, ¶12).  wA licenses media content from, *inter alia*, the three largest broadcast networks in Korea—Korean Broadcasting System (KBS), Seoul Broadcasting System (SBS), and Munhwa Broadcasting Corporation (MBC).[1]  (*Id.*, ¶13–14).  wA is currently the exclusive licensee

---

[1] wA is a joint partnership between Content Wavve, SK Telecom, KBS, MBC, and SBS.

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

of the United States distribution rights to over 1,100 different programs owned by KBS, SBS, and MBC, which is distributes (i.e., streams) via its KOCOWA® service.  (*Id.*, ¶14; Joo Decl., ¶4, Ex. A).  wA generates revenue by a combination of placing ads in free video streams on the KOCOWA® platform, which is called advertising video-on-demand (AVOD), and by charging users a recurring subscription fee, which is called subscription video-on-demand (SVOD).  (FAC, ¶15).

### 1.   wA's Trademark Rights

The name KOCOWA® is a backronym generated from the phrase "**KO**rean **CO**ntent **WA**ve" and has no separate meaning in English or Korean and has no dictionary definition.  (*Id.*, ¶16).  wA protects its KOCOWA® brand by a variety of means, including by obtaining federal trademark registrations.  (*Id.*, ¶18).  At issue here is wA's U.S. Trademark Registration No. 6,183,377, registered on October 27, 2020, (the "Kocowa Mark") for, among other things, video streaming services via the Internet.  (*Id.*, ¶18, Ex, K).  Further, wA owns and operates the KOCOWA.COM domain name, through which it provides information about, accepts subscriptions to, and provides an on-line version of its KOCOWA® service.  (*Id.*, ¶20).  Although Korean-language programming is increasingly popular in the United States, wA relies heavily on word-of-mouth referrals from its registered users to friends and family to increase its subscriber base, particularly because the KOCOWA® service caters to non-native English speakers or non-English speakers in that it provides Korea-originating, Korean-language content.  (*Id.*, ¶17).

### 2.   wA's Exclusive Rights in Copyrighted Works

As mentioned above, wA is the exclusive licensee of the United States distribution rights to over 1,100 different programs owned by the three largest Korean broadcast networks—KBS, SBS, and MBC (the "copyrighted Works").  (*Id.*, ¶13–14; Joo Decl., ¶4, Ex. A).  Each of the copyrighted Works is first published (i.e., is first distributed to viewers) in Korea, and some time thereafter, the copyrighted Work is made available on wA's KOCOWA® service for viewing by registered users in the United States.  (*Id.*, ¶13 and 86).

_____

(https://corp.kocowa.com/about-wa/; Declaration of Jeongphil Joo in Support of Plaintiff's Motion for Entry of Default Judgment ("Joo Decl."), ¶¶1–2).

122738309.4

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

**B.      Defendant's Infringing Conduct**

Tumi Max is leading a sophisticated piracy campaign leveraging infringement of both wA's exclusive distribution rights in the copyrighted Works and wA's trademark rights to create his KOKOA service, which is an entirely free (albeit illegal), direct competitor to wA's legitimate KOCOWA® service.  (*Id.*, ¶21–57).  First, Tumi Max selected the domain names KOKOATV.NET and KOKOA.TV[2] due to their confusing phonetic and visual similarity to wA's registered Kocowa Mark.  (*Id.*, ¶¶46, 50, and 80).  Indeed, in light of the target market for both wA's KOCOWA® service and Tumi Max's competing KOKOA service—non-native English speakers and non-English speakers—this type of phonetic and visual similarity, used in the same manner as wA's Kocowa Mark and to distribute the same Korea-originating content in the same format, is particularly effective in confusing consumers and diverting subscribers away from wA's legitimate KOCOWA® service.  (*Id.*, ¶¶47–49, 73, 53, and 94).

The FAC lists, as only a few examples (reproduced below with ownership added), ten Korea-originating television shows, owned by either KBS, SBS, or MBC and exclusively licensed to wA for distribution in the United States that are also available, without permission, on Defendant's KOKOA service.  (*Id.*, ¶52).  A complete list of programs owned by one of KBS, MBC, and SBS and exclusively licensed to wA for distribution in the United States as of June 30, 2023, is attached as Exhibit A to the Declaration of Jeongphil Joo, submitted concurrently herewith.

| Program (Korean Title) | Program (English Title) | KOKOATV.NET Offering | KOCOWA® Offering | Owner |
|---|---|---|---|---|
| 넘버스 : 빌딩숲의 감시자들 | Numbers | https://kokoatv.net/tv-show/%eb%84%98%eb%b2%84%ec%8a%a4-%eb%b9%8c%eb%94%a9%ec%88%b2%ec%9d%98-%ea%b0%90%ec%8b%9c%ec%9e%90%eb%93%a4/ | https://www.kocowa.com/en_us/season/78717530/numbers | MBC |
| 생손게임 코드레드 | Mission CodeRed | https://kokoatv.net/tv-show/%ec%83%9d%ec%a1%b4%ea%b2%8c%ec%9e%84-%ec%bd%94%eb%93%9c%eb | https://www.kocowa.com/en_us/season/79029549/mission-codered | KBS |

---

[2] KOKOA.TV simply redirects to KOKOATV.NET.  (*Id.*, ¶21).

122738309.4

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

LEWIS ☐ ROCA

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

| Program (Korean Title) | Program (English Title) | KOKOATV.NET Offering | KOCOWA® Offering | Owner |
|---|---|---|---|---|
| | | %a0%88%eb%93%9c/ | | |
| 조선변호사 | Joseon Attorney: A Morality | https://kokoatv.net/tv-show/%ec%a1%b0%ec%84%a0%eb%b3%80%ed%98%b8%ec%82%ac/ | https://www.kocowa.com/en_us/season/74145257/joseon-attorney-a-morality | MBC |
| 강심장리그 | Thumbnail Battle: The Strongest Hearts | https://kokoatv.net/tv-show/%ea%b0%95%ec%8b%ac%ec%9e%a5-%eb%a6%ac%ea%b7%b8/ | https://www.kocowa.com/en_us/season/77808304/thumbnail-battle-the-strongest-hearts | SBS |
| 어쩌다 마주친, 그대 | My Perfect Stranger | https://kokoatv.net/tv-show/%ec%96%b4%ec%a9%8c%eb%8b%a4-%eb%a7%88%ec%a3%bc%ec%b9%9c-%ea%b7%b8%eb%8c%80/ | https://www.kocowa.com/en_us/season/76561204/my-perfect-stranger | KBS |
| 나의 X같은 스무살 | My 20th Twenty | https://kokoatv.net/tv-show/%eb%82%98%ec%9d%98-x%ea%b0%99%ec%9d%80-%ec%8a%a4%eb%ac%b4%ec%82%b4/ | https://www.kocowa.com/en_us/season/76411757/my-20th-twenty | KBS |
| 하늘의 인연 | Meant To Be | https://kokoatv.net/tv-show/%ed%95%98%eb%8a%98%ec%9d%98-%ec%9d%b8%ec%97%b0/ | https://www.kocowa.com/en_us/season/76179394/meant-to-be | MBC |
| 과학수사대 스모킹건 | KCSI: Smoking Gun | https://kokoatv.net/tv-show/%ea%b3%bc%ed%95%99%ec%88%98%ec%82%ac%eb%8c%80-%ec%8a%a4%eb%aa%a8%ed%82%b9-%ea%b1%b4/ | https://www.kocowa.com/en_us/search?q=KCSI%3A%20Smoking%20Gun | KBS |
| 금이야 혹이야 | Apple of My Eye | https://kokoatv.net/tv-show/%ea%b8%88%ec%9d%b4%ec%95%bc-%ec%98%a5%ec%9d%b4%ec%95%bc/ | https://www.kocowa.com/en_us/season/74047619/apple-of-my-eye | KBS |
| 소년판타지-방과후 설렘 시즌2 | Fantasy Boys | https://kokoatv.net/tv-show/%ec%86%8c%eb%85%84%ed%8c%90%ed%83%80%ec%a7%80-%eb%b0%a9%ea%b3%bc%ed%9b%84-%ec%84%a4%eb%a0%98-%ec%8b%9c%ec%a6%8c2/ | https://www.kocowa.com/en_us/season/74483666/fantasy-boys | MBC |

Indeed, as explained in detail in the FAC, Tumi Max has developed a sophisticated

copyright piracy operation in the KOKOA service.  (*Id.*, ¶¶25–38).[3]  For example, Defendant's KOKOATV.NET web page hosts so-called "deeplinks" to the infringing content, which are then streamed to the viewer from one of a few "spoof" domains.  (*Id.*, ¶¶28–32).  In particular, rather than streamed from the KOKOATV.NET domain directly, the infringing works are streamed to the viewer from a different "spoof" domain name, such as SFOODTV.COM, DICECAKE.COM, GAMEJUICY.COM, and JUSTLINK.TV.  (*Id.*, ¶¶31–35).  Frustrating efforts to remove this infringing content, a user attempting to access the "spoof" domain directly, i.e., by entering the web address into the URL bar of an Internet browser, is taken to an innocuous webpage unrelated to the infringing content.  (*Id.*, ¶¶31–33).  The only known way to access the infringing works is via the deeplinks hosted on KOKOATV.NET.  (*Id.*, ¶36).

While the "spoof" domains may appear unrelated to the KOKOA service, by using the "debugger" console available on various Internet browsers, it was determined that the infringing works, regardless of the "spoof" domain, are all streamed from https://hqplus.vidground.com.  (*Id.*, ¶37).  While it was apparent that there was some connection between KOKOATV.NET and VIDGROUND.COM, it was only after NameCheap revealed the registrant information for these domains that it became known that Tumi Max is, indeed, the owner of both of these domains.  (*Id.*, ¶8).

### C.   Defendant's Default

On September 20, 2023, the Court, on wA's motion, permitted that Defendant Tumi Max be served via email.  (Dkt. No. 18).  Defendant was properly served with the First Amended Complaint and associated documents via email on September 22, 2023.  (Dkt. No. 21).  Defendant was required to respond to the First Amended Complaint on October 13, 2023, but failed to do so. (Dkt. No. 22-1, ¶¶2–4).

Upon wA's request, the Clerk entered Default against Defendant on October 17, 2023. (Dkt. No. 23).  Counsel for wA served, via email, the Clerk's Entry of Default on October 19, 2023.

---

[3] After the filing of this suit, it was discovered that KOKOATV.NET is geoblocked in Korea. (Declaration of Kyle W. Kellar in Support of Plaintiff's Motion for Entry of Default Judgment ("Kellar Decl."), ¶1).  It is believed that this is intentional to prevent the copyright owners from becoming aware of the infringements.

122738309.4

(Kellar Decl., ¶2, Ex. A).  To date, Defendant has not made an appearance in this case, filed any responsive pleading, or otherwise contacted wA or wA's counsel.  (*Id.*, ¶3).

## III.    ARGUMENT

### A.    wA is Entitled to Default Judgment Against Defendant Tumi Max

Because the Clerk of the Court has entered default against Defendant under Federal Rule of Civil Procedure 55(a), Plaintiff may now move the Court for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).  *Million v. Pindernation Holdings LLC*, No. CV-23-00072-PHX-MTL, 2023 WL 2813684 at \*4 (D. Az. April 5, 2023) (citing *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980)).  "Upon entry of default, the factual allegations in a complaint, except those relating to damages, are deemed admitted."  *Atlatl Group LLC v. Unknown Parties*, No. CV-20-01199-PHX-DJH, 2023 WL 2596100 at \*1 (D. Az. March 21, 2023) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)).  Because this Court has jurisdiction over this case and Defendant, because service was properly effected, and because default judgment is proper in light of the merits and fairness to Plaintiff, the Court should grant Plaintiff's request.  Further, Plaintiff does not request any remedy different in kind than was prayed for in the Complaint.  Fed. R. Civ. Proc. 54(c).

#### 1.    The Court Has Jurisdiction

"Before assessing the merits of a plaintiff's motion for default judgment, the Court must confirm that it has subject-matter jurisdiction over the case and personal jurisdiction over the defendant."  *Atlatl Group LLC v. Unknown Parties*, No. CV-20-01199-PHX-DJH, 2023 WL 2596100 at \*1 (D. Az. March 21, 2023) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).  This prevents the Court from "entering a default judgment that can later be successfully attacked as void." *Sennheiser Electronic Corp. v. Evstigneeva*, Case No. CV 11-7884 GAF (FFMx), 2012 WL 13012384 at \*2 (C.D. Cal. Sept. 27, 2012) (quoting *In re Tuli*, 172 F.3d at 712) (internal quotations omitted)).

The Court has subject matter jurisdiction pursuant to, at least, 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and 1338(a) for the federal trademark and copyright infringement claims and 15 U.S.C. § 1125 for the cybersquatting claim and has supplemental jurisdiction pursuant to, at least,

122738309.4

- 12 -

28 U.S.C. §§ 1367(a) and 1338(b) for the state law claim as it arises under the same facts as the federal law claims.  (FAC, ¶2).

The Court has general personal jurisdiction over Defendant at least because Defendant expressly consented to jurisdiction in this Court when he agreed to the Namecheap Registration Agreement, a necessary step in registering each of the domain names at issue in this case.  (*Id.*, ¶4). In relevant part, the Namecheap Registration Agreement requires that:

> [F]or the adjudication of third party disputes (i.e., disputes between you and another party, not us) concerning or arising from use of domain names registered hereunder, **you shall submit without objection, without prejudice to other potentially applicable jurisdictions, to the subject matter and personal jurisdiction of the courts** ... (ii) where we are located, currently those **State or federal courts whose geographic districts include Maricopa County, State of Arizona**.

(*Id.*, ¶4) (emphasis added).  The Ninth Circuit, in *S.E.C. v. Ross*, stated that "[i]n general, ... a party has consented to personal jurisdiction when the party took some kind of affirmative act—accepting a forum selection clause, submitting a claim, filing an action—that fairly invited the court to resolve the dispute between the parties" and explicitly held that "parties may consent to jurisdiction through a forum selection clause in a contract."  504 F.3d 1130, 1149 (9th Cir. 2007) (internal citations omitted).  Here, in agreeing to Namecheap's Registration Agreement to register the domain names at issue, Defendant consented to jurisdiction in this Court "through a forum selection clause in a contract."  Thus, the Court has personal jurisdiction over Defendant.

Separately, 15 U.S.C. § 1125(d)(2)(A) (the "Anticybersquatting Consumer Protection Act" or "ACPA") allows that "[t]he owner of a mark may file an *in rem* civil action against a domain name in the judicial district in which the domain name registrar ... is located" when the domain name violates the rights in a registered mark and the Court is otherwise "not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action."  While this Court has personal jurisdiction over Tumi Max in light of his consent to the same, as explained above, if the Court finds otherwise, the Court has a separate basis for personal jurisdiction over

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

Tumi Max as the owner of the domain names at issue pursuant to the ACPA.

Additionally, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant has committed substantial infringing acts in this judicial district by distributing infringing content within this judicial district.  (FAC, ¶¶5–6).

Lastly, Defendant was properly served via email pursuant to Fed. R. Civ. Proc. 4(f)(3), consistent with this Court's Order allowing the same.  (Dkt. Nos. 18 and 21).

Accordingly, this Court has subject matter and personal jurisdiction over Defendant, venue is proper in this Court, and Defendant was properly served.

### 2.    The *Eitel* Factors Strongly Favor Default Judgment

"Entry of default judgment is within a court's discretion."  *Atlatl Group LLC v. Unknown Parties*, No. CV-20-01199-PHX-DJH, 2023 WL 2596100 at *1 (D. Az. March 21, 2023) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).  In determining whether to grant a request for default judgment, the Ninth Circuit has enumerated seven factors, the so-called *Eitel* factors, to be weighed.  *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  The *Eitel* factors are:

(1) the possibility of prejudice to the plaintiff;
(2) the merits of plaintiff's substantive claim;
(3) the sufficiency of the complaint;
(4) the sum of money at stake in the action;
(5) the possibility of a dispute concerning material facts;
(6) whether the default was due to excusable neglect; and
(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*

When considering the *Eitel* factors, "the Court accepts as true the complaint's well-pled factual allegations."  *Fornix Holdings LLC v. Unknown Party*, No. CV-22-00494-PHX-DLR, 2023 WL 6295014 at *1 (D. Az. Sept. 27, 2023) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  Nevertheless, while weighing the relevant factors, the Court "is not required to make detailed findings of fact."  *Id.* (quoting *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (internal quotations omitted)).  Here, all seven *Eitel* factors weigh in favor of default judgment.

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

122738309.4

### a)  The First, Fifth, Sixth, and Seventh *Eitel* Factors

"In cases like this one, in which [a defendant has] not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Fornix Holdings LLC v. Pepin*, No. CV-22-01275-PHX-DWL, 2023 WL 4488976 at *1 (D. Az. July 12, 2023) (quoting *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210 at *3 (D. Az. Mar. 27, 2020)) (alternations in original).  The first factor weighs in favor of default judgment because, if Plaintiff's motion were denied, Plaintiff would be without recourse. *Id.* at *1 (citing *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).  Because there is no dispute over material facts, and no indication that Defendant's default is due to excusable neglect because Defendant was properly served, the fifth and sixth factors weigh in favor of default judgment. *Id.* at *2; *Million v. Pindernation Holdings LLC*, No. CV-23-00072-PHX-MTL, 2023 WL 2813684 at *3 (D. Az. Apr. 6, 2023) ("Where a defendant is served properly, it is unlikely that their failure to answer is a result of excusable neglect.").  The seventh factor "generally weighs against default judgment" because "cases should be decided on their merits whenever reasonably possible." *Fornix Holdings v. Pepin*, 2023 WL 4488976 at *2 (quoting *Eitel*, 782 F.2d at 1472).  Nevertheless, the Federal Rules authorize default judgments, "indicat[ing] that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.  Indeed, "Defendant's failure to defend this matter ... makes a decision on the merits impossible." *Atlatl Group*, 2023 WL 2596100 at *4 (citing *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1051 (N.D. Cal. 2010)).  Thus, the seventh factor also weighs in favor of default judgment.

### b)  The Fourth *Eitel* Factor

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of the [d]efendants' conduct." *PepsiCo,* 238 F.Supp.2d at 1176.  Plaintiff is not seeking monetary damages in relation to Defendant's conduct, which favors entry of default judgment. *Id.* at 1177.

### c)  The Second and Third *Eitel* Factors

"Under an *Eitel* analysis, the merits of [a] plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Atlatl Group*, 2023 WL 2596100 at *2 (quoting *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1048) (internal quotations omitted).  These "are generally the most

significant [factors] and are often dispositive." *Hansen v. Integrity Assets LLC*, No. 2:21-cv-03994-ODW (RAOx), 2021 WL 5999317 at *3 (C.D. Cal. Dec. 20, 2021).

Taking all well-pleaded facts as true, the operative First Amended Complaint (Dkt. No. 13) states claims for infringement of Plaintiff's Kocowa Mark, cybersquatting, infringement of Plaintiff's exclusive rights in the copyrighted Works, federal unfair competition, and tortious interference with business expectancy under Arizona law.

**(1)** **Counts I and IV: Trademark Infringement and Unfair Competition**

Counts I and IV are claims for federal trademark infringement and federal unfair competition, respectively. (FAC, ¶¶71–77 and 93–98). "The Ninth Circuit has acknowledged that claims for trademark infringement [and] unfair competition under federal law ... are all 'subject to the same legal standards.'" *Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, No. 2:20-CV-04310-ODW (KSx), 2022 WL 3908831 at *3 (C.D. Cal. Aug. 30, 2022) (quoting *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012)). Accordingly, Counts I and IV are properly analyzed together "under the framework for federal trademark infringement under the Lanham Act." *Kinsley Tech.*, 2022 WL 3908831 at *3.

"A person shall be liable in a civil action by a registrant owner of a mark if that person, without consent, uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.'" *Atlatl Group*, 2023 WL 2596100 at *2 (quoting 15 U.S.C. § 1114(1)(a)). "To prevail on its trademark infringement claim, [Plaintiff] must show that: (1) it has a valid, protectable trademark, and (2) that [Defendant's] use of the mark is likely to cause confusion." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

As to the first point, the Complaint sets forth the identity of Plaintiff's valid, protectable KOCOWA mark, registration number 6183377, includes a copy of the federal registration, and describes Plaintiff's use of the KOCOWA mark in connection with, *inter alia*, video streaming

122738309.4

services via the Internet.  (FAC, ¶¶12–18, 20, and 72, Dkt. No. 13-8)[4].

As to the second point, likelihood of confusion, the Complaint describes the origin of Plaintiff's KOCOWA mark as an arbitrary backronym of "**KO**rea **CO**ntent **WA**ve," rendering it conceptually strong.  *Debell Windows Systems, Inc. v. Dabella Exteriors, LLC*, Case No. 3:20-cv-00420-MMD-WGC, 2020 WL 5632958 at *7 (D. Nev. Sept. 21, 2020) (finding the subject mark "arbitrary" and, thus, "conceptually strong").  The Complaint further describes how the parties' services are nearly identical, offering the same Korea-originating programming, targeting the same non-English or non-native English-speaking users over the Internet.  (FAC, ¶¶17, 40, 43–48).

Further, Defendant's KOKOA mark is a phonetic and visual imitation of Plaintiff's KOCOWA mark, pronounced KO-KO-A versus KO-CO-WA.  (*Id.*, ¶¶39, 46, 48–50); *Debell Windows Systems*, 2020 WL 5632958 at *9 ("Courts consider sight, sound and meaning to determine the similarity of competing marks.") (quoting *One Indus., LLC v. Jim O'Neal Distributing*, 578 F.3d 1154, 1162 (9th Cir. 2009) (internal quotations omitted).  For example, in *Debell Windows Systems*, the court found that the competing marks "are both visually and phonetically similar, and [] do not have dissimilar meanings, because both words lack any inherent meaning." *Debell Windows Systems*, 2020 WL 5632958 at *9.  Such phonetic and visual similarly is particularly damaging here because both Plaintiff's KOCOWA® service and Defendant's KOKOA service are provide the *same* Korean-language content targeted to the *same* users, and because wA relies heavily on word-of-mouth referrals for new subscribers.  (FAC, ¶¶17, 23, 40); *Debell Window Systems*, 2020 WL 5632958 at *9 (finding that "the phonetic similarity more important than the visual similarity here because Plaintiff's mark covers the word "DeBell" in any format or stylization, not just the logo.  And especially given Plaintiff's proffered evidence that much of its business is word-of-mouth, a reasonable consumer could easily confuse DeBell for DaBella when trying to remember the name of a business someone told them about that will both sell you windows and then install them for you.") (internal citations omitted).  Lastly, the Complaint

---

[4] Exhibit B to the Kellar Decl. is a recent printout from the USPTO Trademark Electronic Search System (TESS) confirming that Plaintiff wavve Americas, Inc. is the current owner of trademark registration number 6183377.  See *Bhasin v. Pathak*, No. EDCV 13-00293-VAP, 2013 WL 1871508 at *2 (C.D. Cal. May 3, 2013) (taking judicial notice of records on USPTO website, as they were public records).

explains that Defendant intentionally selected the KOKOA mark and the KOKOA.TV and KOKOATV.NET domain names to trade off the goodwill associated with Plaintiff's Kocowa Mark. (FAC, ¶¶39, 75).

Thus, Defendant's unauthorized use of the KOKOA mark in the KOKOA.TV and KOKOATV.NET domain names and in connection with the online distribution (i.e., streaming) of the same Korean-originating and Korean-language programming available on Plaintiff's KOCOWA® service is likely to cause confusion, mistake, or to deceive customers into believing that Defendant's KOKOA service is, or is related to, Plaintiff's KOCOWA service. (FAC, ¶¶39, 73).

### (2)     Count II: Cybersquatting

To prove "cyberpiracy" or "cybersquatting," a plaintiff must show "that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)).

As explained in the Complaint, Defendant registered, trafficked in, and/or used the domain names KOKOA.TV and KOKOATV.NET. (FAC, ¶79). As described above with respect to Counts I and IV, these domain names are confusingly similar to Plaintiff's registered Kocowa Mark at least because they are phonetically identical and visually similar to Plaintiff's Kocowa Mark. In the case of KOKOATV.NET, the generic acronym "TV" is added, but this does little, if anything, to dispel confusion, especially here where Plaintiff's service is related to TV programming. (FAC, ¶41); *ICON Health & Fitness Inc. v. pro-form.com*, No. CV-15-01981-PHX-BSB, 2017 WL 4797794 at *6 (D. Ariz. Sept. 12, 2017), *report and recommendation adopted*, No. CV151981PHXSMMBSB, 2017 WL 4779216 (D. Ariz. Oct. 23, 2017) (quoting *DaimlerChrysler v. The Net, Inc.*, 388 F.3d 201, 206 (6th Cir. 2004)) ("[C]ourts have consistently found that slight differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant.") (internal quotations and citations omitted).

The Anti-Cybersquatting Consumer Protection Act lists nine factors "a court may consider

... but [are] not limited to" in determining if a defendant has a bad faith intent to profit from the mark.  15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX).  Most relevant here is factor five, which focuses on "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site."  15 U.S.C. § 1125(d)(1)(B)(i)(V).

As set forth in the Complaint and described above, Defendant uses the domain names KOKOA.TV and KOKOATV.NET to stream infringing copies of the copyrighted Works in violation of Plaintiff's exclusive rights to do the same.  (FAC, ¶¶43–50, 81).  By offering many of the same programs that are exclusively licensed to Plaintiff, for free and without limitation, Defendant is diverting customers from Plaintiff's online KOCOWA® service, available at KOCOWA.COM, to Defendant's competing KOKOA service, available at KOKOA.TV and KOKOATV.NET.  (*Id.*, ¶¶49–50).  Further, Defendant has placed numerous advertisements on the websites associated with the KOKOATV.NET domain name such that he receives "commercial gain" in the form of advertising revenue to Plaintiff's direct detriment.  (*Id.*, ¶56).  Accordingly, Defendant had a bad faith intent to profit from the domain names KOKOA.TV and KOKOATV.NET at least by intentionally diverting customers away from Plaintiff's legitimate KOCOWA® service to Defendant's illegitimate KOKOA service by intentionally using a confusingly similar variation of Plaintiff's Kocowa Mark in his domain names.  (*Id.*, ¶¶49, 79–82).

**(3)      Count III: Copyright Infringement**

"To present a *prima facie* case of direct copyright infringement, a plaintiff must demonstrate: (1) ownership of the copyright at issue; (2) a violation of an exclusive right set forth in copyright, and (3) causation by the defendant; a plaintiff need not prove damages."  *Fornix Holdings LLC v. Unknown Party*, No. CV-22-01942-PHX-DJH, 2023 WL 4031961 at *2 (D. Az. June 15, 2023) (citing *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1080 (9th Cir. 2021)).  However, when a right under a copyright has been exclusively licensed, "only the exclusive licensee and not the original owner can sue for infringement of those rights."  *Righthaven LLC v.*

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

*Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013).

The copyrighted Works at issue in this case are owned by the three largest Korean broadcast networks—KBS, MBC, and SBS.  (FAC, ¶14, 25, 51, and 52).  Plaintiff is the exclusive licensee of the United States distribution rights in over 1,100 different programs owned by KBS, MBC, and SBS (the "copyrighted Works").  (*Id.*)  The Complaint lists, as a small example, ten of these Works. (*Id.*, ¶52); see *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16CV1318GBDBCM, 2017 WL 696126 at *14 (S.D.N.Y. Feb. 15, 2017), *report and recommendation adopted sub nom. Joint Stock Co. v. Infomir LLC*, No. 16CIV1318GBDBCM, 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) ("Where a copyright claim is based on the alleged wholesale infringement of a large number of copyrighted works, courts have relaxed this rule somewhat, but the plaintiff must still identify, at a minimum, representative examples of the works allegedly infringed....").  A complete list of the copyrighted Works, as of June 30, 2023, is attached to the Joo Decl. as Exhibit A.

Defendant infringes Plaintiff's exclusive rights in the copyrighted Works by doing exactly what Plaintiff does through its KOCOWA® service, albeit without authorization.  (FAC, ¶¶53, 87, and 88).  That is, Defendant distributes (i.e., streams) unauthorized copies of the copyrighted Works over the Internet to viewers in the United States via his KOKOA service.  (*Id.*, ¶¶53, 87, and 88). Further, Defendant is hosting infringing copies of the copyrighted Works on VIDGROUND.COM and then distributes the same from VIDGROUND.COM to viewers in the United States via the deeplinks available only via KOKOATV.NET (and via KOKOA.TV, which redirects to KOKOATV.NET).  (*Id.*, ¶¶25–38 and 51–57).

While Plaintiff's rights in the copyrighted Works are undisputed, for completeness, relevant facets of the copyrighted Works, and Plaintiff's ownership of certain rights thereunder, are discussed below.

**(a)**    **The Copyrighted Works Need Not Be Registered**

Generally, United States works must be registered with the U.S. Copyright Office before an infringement action can commence.  17 U.S.C. § 411(a).  On the other hand, " the Berne Convention

Implementation Act, 17 U.S.C. §§ 101, et seq., 'allows owners of unregistered foreign copyrights from Berne Convention signatory nations to bring claims of copyright infringement in United States courts.'" *Liaigre, Inc. v. California Furniture Collection, Inc.,* No. SACV1901160JAKKESX, 2022 WL 18278600 at *7 (C.D. Cal. Oct. 6, 2022) (quoting *MPD Accessories B.V. v. Urban Outfitters*, No. 12 CIV. 6501 LTS KNF, 2014 WL 2440683 at *5 (S.D.N.Y. May 30, 2014)).

As explained in the Complaint, each of the copyrighted Works is broadcast and publicly displayed in Korea by the respective copyright owner before it is distributed in the United States. (*Id.*, ¶¶13, 86).  Further, Korea has been a party to the Berne Convention since August 21, 1996. (*Id.*, ¶86).  As such, the copyrighted Works are not United States works and are not subject to the registration requirements of 17 U.S.C. § 411(a).  *See Crunchyroll, Inc. v. Pledge*, No. C 11-2334 SBA, 2014 WL 1347492 at *16 (N.D. Cal. Mar. 31, 2014) (finding that television episodes first broadcast in Japan, a Berne signatory, were not "United States work" and were excused from the registration requirement).

### (b)      wA Has Standing

"[T]o have standing to bring a copyright infringement claim, 'the plaintiff must have a legal or beneficial interest in at least one of the exclusive rights described in § 106,' and 'the infringement must be committed while he or she is the owner of the particular exclusive right allegedly infringed.'" *Crunchyroll*, 2014 WL 1347492 at *13 (quoting *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) (quoting 17 U.S.C. § 501(b)).  The Copyright Act permits that the "exclusive rights[ may be chopped up an[d] owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right." *Id.* at *14 (quoting *Silvers*, 402 F.3d at 886–87).  Such a transfer in ownership must be something other than a nonexclusive license and must be "in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." *Id.* at *14 (quoting 17 U.S.C. §§ 101 and 204(a)).  "[T]here is no requirement for any 'magic words' in the writing, however.  *Id.* at *14 (quoting *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999)).

Although undisputed by Defendant, relevant portions of agreements between each of KBS, MBC, and SBS and Plaintiff providing the "[e]xclusive grant of content distribution and

1  transmission business rights for OTT" in North America are submitted herewith.  (Kellar Decl.,

2  ¶¶5–7, Exs. D, F, H (Article 3(1)(a))).

3       Nevertheless, even if these writings are deemed insufficiently specific, Plaintiff should not

4  be precluded from establishing standing in this case.  Plaintiff is a corporation that is owned and

5  controlled, in part, by each of the three copyright owners—KBS, MBC, and SBS.  (Joo Decl., ¶2;

6  Kellar Decl., ¶¶5–7, Exs. C–H (Article 2(1)–(2)).  Further, each of KBS, MBC, and SBS has at

7  least one member on wA's Board of Directors and expressly authorized Plaintiff to bring this suit.

8  (*Id.*, ¶3).  Accordingly, there is no dispute between Plaintiff any of KBS, MBC, and SBS, the

9  copyright owners, as to the validity of the transfer of exclusive rights to Plaintiff.

10      The Ninth Circuit has stated that "in situations in which the copyright holder appears to

11  have no dispute with its licensee on [the issue of transfer], it would be anomalous to permit a third

12  party infringer to invoke this provision against the licensee."  *Crunchyroll*, 2014 WL 1347492 at

13  *14 (quoting *Radio Television Espanola*, 183 F.3d at 929); *Dish Network L.L.C. v. Fraifer*, No.

14  8:16-CV-2549-T-60CPT, 2020 WL 1515938 at *18 (M.D. Fla. Jan. 31, 2020), *report and*

15  *recommendation adopted*, No. 8:16-CV-2549-60CPT, 2020 WL 1512090 (M.D. Fla. Mar. 30,

16  2020) (explaining that "the chief purpose of section 204(a) ... is to resolve disputes between

17  copyright owners and transferees" and that "it would be unusual and unwarranted to permit a third-

18  party infringer to invoke section 204(a) where, as here, there is no dispute between the copyright

19  owner and the transferee about the status of the copyright.") (internal citations and quotations

20  omitted).  Thus, even if the writings are deemed insufficient, such a finding should not preclude

21  Plaintiff from asserting the copyright infringement claim since the copyright owners are each a

22  stockholder of Plaintiff and expressly authorized this litigation.  *See Crunchyroll*, 2014 WL

23  1347492 at *14 (permitting an exclusive licensee to maintain a copyright infringement claim

24  despite a lack of any writing evidencing the purported transfer of rights).

25      Lastly, "[a]s a general matter, the law of the jurisdiction where an artistic work is created

26  and first published governs issues concerning copyright ownership." *Liaigre, Inc.v. California*

27  *Furniture Collection, Inc.*, No. SACV1901160JAKKESX, 2022 WL 18278600 at *7 (C.D. Cal.

28  Oct. 6, 2022) (internal quotations and citations omitted).  Here, Korean copyright law would

122738309.4

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

govern any issue regarding copyright ownership.  As at least one other court has found that an exclusive transfer of distribution rights is permitted under Korean copyright law.  *See Seoul Broadcasting System Int'l, Inc. v. Young Min Ro*, 784 F. Supp. 2d. 611, 616 (E.D. Va. 2011) (citing *Korean Copyright Act*, Articles 45–47 and 53–55) ("The Korean parent networks, in turn, then assigned to their United States affiliates, the plaintiffs in this case, all rights to distribute and rebroadcast the works in the United States.  Under Korean copyright law, such transfers or assignments of copyrights are valid and fully enforceable, and plaintiffs have therefore adequately established standing to sue as a matter of law.") (internal citations omitted)  As such, there can be no dispute (and there is none), that the exclusive right to distribute the copyrighted Works in the United States was properly and validly transferred from the copyright owners—the Korean broadcast companies—to Plaintiff under Korean copyright law.

Thus, Plaintiff has standing to bring its copyright infringement claim.

**(c)**     <u>United States Copyright Law Is Applicable To Defendant's Acts</u>

While "United States copyright laws do not reach acts of infringement that take place entirely abroad," here, the infringement may begin abroad, likely in Thailand where Defendant resides, but culminates in the United States when the infringing shows are viewed by any number of individuals.  Such infringement is not "wholly extraterritorial" as it is specifically directed to viewers in the United States and culminates in the United States, rendering the application of United States copyright law against Defendant proper.  See *Crunchyroll*, 2014 WL 1347492 at *17 (finding acts resulting in viewing of copyrighted works by individuals in the United States sufficient to find the infringing conduct not "wholly extraterritorial"); *Sound N Light Animatronics Co. v. Cloud B, Inc.*, No. CV1605271BROJPR, 2017 WL 3081685 at *7 (C.D. Cal. Apr. 7, 2017) (finding application of U.S. copyright law appropriate where the defendant's "allegedly infringing products, although manufactured in China, reached consumers in the United States"); *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1146 (N.D. Cal. 2011) (finding that "[d]efendant's direct action led to the creation of a copy of the Grandma video on YouTube's servers in California, and to the subsequent viewing of the video by potentially thousands in the United States," rendering the application of

U.S. copyright law proper); *Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 915 (D.C. Cir. 2018) (holding application of U.S. copyright law proper because, *inter alia*, "Congress had good reason to allow domestic copyright holders to enforce their rights against foreign broadcasters who direct infringing performances into the United State ... [because] a statutory scheme that affords copyright holders no protection from such broadcasters would leave the door open to widespread infringement").

    **(4)**  <u>Count V: Tortious Interference with Business Expectancy</u>

   A tortious interference claim "requires proof of four elements: (1) existence of a valid contractual relationship or business expectancy; (2) interferer's knowledge of that relationship or expectancy; (3) intentional interference inducing termination of that relationship or expectancy; and (4) resultant damages." *Alpha Phoenix Industries v. Scinternational Inc.*, No. CV-12-1848-PHX-SMM, 2013 WL 5814850 at \*3 (D. Ariz., Oct. 29, 2013).

   Defendant has been and is aware of Plaintiff's business expectations with Plaintiff's customers (i.e., subscribers) and other individuals interested in the OTT VOD distribution of Korea-produced programming. (FAC, ¶¶100–102). As explained above, Defendant intentionally and willfully infringed Plaintiff's Kocowa mark and infringed its exclusive rights in the copyrighted Works to operate its competing and illegal KOKOA service with the intent to divert actual subscribers from Plaintiff's KOCOWA® service and those potential subscribers interested in Korea-produced programming away from Plaintiff's legitimate KOCOWA® service. (*Id.*, ¶¶49 and 101–105).

   Accordingly, all seven *Eitel* factors favor entry of default judgment against Defendant as to all asserted claims.

   **B.**  <u>wA Is Entitled To Its Requested Remedies</u>

   Plaintiff's Complaint prays for relief in the form of, *inter alia*, a permanent injunction preventing Defendant from reproducing, distributing, or publicly displaying the copyright Works and the transfer of ownership of KOKOA.TV and KOKOATV.NET to Plaintiff. (FAC, ¶¶76, 77, 83, and 92).

122738309.4

1.    **wA is Entitled to a Permanent Injunction**

"The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (*quoting* 15 U.S.C. § 1116(a)).  Separately, "the Copyright Act provides that courts 'may' grant injunctive relief on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." *Fornix Holdings v. Pepin*, No. CV-22-01275-PHX-DWL, 2023 WL 4488976 at *4 (D. Az. July 11, 2023) (quoting *eBay Inc. v. Mercexchange*, LLC, 547 U.S. 388, 392 (2006)) (internal quotations omitted).

To obtain a permanent injunction, Plaintiff must satisfy the following four-factor test:

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
(4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc.*, 547 U.S. at 391.

As to the trademark infringement claim, because Plaintiff has presented unrebutted evidence that Defendant infringed and is currently infringing its Kocowa Mark, and as such, "under 15 U.S.C. § 1116(a), [Plaintiff] is therefore entitled to a presumption that it is being irreparably harmed." *Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, No. 2:20-CV-04310-ODW (KSx), 2022 WL 3908831 at *6 (C.D. Cal. Aug. 30, 2022).  Second, without Defendant's participation, monetary damages are impossible to quantify.  Further, Plaintiff's lost market share and goodwill are losses that cannot be quantified or adequately remedied by monetary damages.  Third, without entry of a permanent injunction, Defendant would be tacitly permitted to continue infringing Plaintiff's Kocowa Mark.  Further, unmitigated infringement, which Defendant has continued despite this lawsuit, may tempt others to similarly infringe Plaintiff's Intellectual Property rights.  Fourth, "[i]n trademark infringement cases, the public interest is the right of the public not to be deceived or confused.  Where [a] defendant's concurrent use of [a] plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use." *Kinsley Tech.*,

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ROCA

1   2022 WL 3908831 at *6.  As such, there is no public harm in prohibiting Defendant's infringing

2   conduct.

3          As to the copyright infringement claim, Plaintiff is and continues to suffer irreparable injury

4   because, despite this lawsuit, Defendant continues to infringe Plaintiff's exclusive rights to

5   distribute the copyrighted Works in the United States.  Further, Plaintiff's business relies on the

6   licensing of Korea-originating copyrighted Works from their Korean owners for distribution to

7   subscribers of its KOCOWA® service in the United States.  Defendant, by infringing Plaintiff's

8   exclusive rights in the copyrighted Works and offering the same to anyone in the United States free

9   of charge, is directly undercutting Plaintiff's business model and risks Plaintiff's future success.

10  Further, monetary remedies are unable to adequately compensate for the shear scope of Defendant's

11  infringement but, even if they could be quantified, are extremely unlikely to satisfied in light of

12  Defendant's overseas domicile and refusal to participate in this lawsuit.  Lastly, Defendant's

13  conduct is contrary to the law, and "the public interest is not disserved by prohibiting Defendant

14  from engaging in conduct contrary to law."  *Nicklaus Companies LLC v. Bryan Hepler Golf LLC*,

15  No. CV-18-01748-PHX-ROS, 2019 WL 1227198 at *1 (D. Az. March 15, 2019).

                    **2.      wA is Entitled to KOKOA.TV and KOKOATV.NET**

16

17         "In any civil action involving the registration, trafficking, or use of a domain name under

18  this paragraph, a court may order ... the transfer of the domain name to the owner of the mark."  15

19  U.S.C.  §  1125(d)(1)(C).   Accordingly,  Plaintiff  respectfully  requests  that  the  Court  order

20  NameCheap, Inc.,[5] as the registrar of record, transfer ownership of the domain names KOKOA.TV

21  and  KOKOATV.NET  to  Plaintiff  to  ensure  that  the  infringements  of  Plaintiff's  Intellectual

22  Property rights cease.

23  **IV.    CONCLUSION**

24         For  the  foregoing  reasons,  wA  respectfully  requests  that  its  motion  for  entry  of  default

25  judgment be granted.

26

27

28  ───────────────────
    [5] As explained at paragraph 8 of the FAC, NameCheap has consented to the Court's jurisdiction
    for such Orders without being a named party in the lawsuit.

    122738309.4

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ◻ ROCA

Dated: October 8, 2023.

Respectfully submitted,

LEWIS ROCA ROTHGERBER
CHRISTIE LLP

By: /s/ Ryan D. Pont
Kyle W. Kellar
Ryan D. Pont

*Attorneys for Plaintiff wavve Americas, Inc.*

201 East Washington Street
Suite 1200
Phoenix, AZ 85004

LEWIS ☐ ROCA

122738309.4