**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Telephone: 602.262.5311

**Ryan D. Pont** (State Bar No. 033391)
Direct Dial: 602.262.5313
Direct Fax: 602.734.3769
Email:  rpont@lewisroca.com

**Kyle W. Kellar** (*Pro hac vice*)
Direct Dial: 626.683.4590
Direct Fax: 626.577.8800
Email:  kkellar@lewisroca.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Wavve Americas, Inc., a Delaware corporation,<br><br>             Plaintiff,<br><br>  vs.<br><br>Tumi Max, an individual,<br><br>             Defendant. | Case No. 2:23-cv-01819-MTL<br><br>**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER WITH NOTICE**<br><br>**[ORAL ARGUMENT REQUESTED]** |

## I.    INTRODUCTION

Plaintiff Wavve Americas, Inc. ("Plaintiff" or "wA"), by and through its attorneys, hereby moves the Court for a temporary restraining order with notice[1] against Defendant Tumi Max ("Defendant" or "Tumi Max") to prevent irreparable injury against wA. A temporary restraining order is necessary to protect wA's substantial Intellectual Property rights and business interests that Defendant has undermined through its recent publicity campaign attempting to legitimize its wholly illegitimate actions.

### A.    Brief Case History

This matter is currently pending a ruling on wA's Motion for Entry of Default Judgment, and many of the facts and analysis set forth below in Sections II–IV are found in the Motion for Entry of Default Judgment. (Dkt. 24). As a brief overview, wA offers its subscription based KOCOWA® service to users in the United States, through which it offers

---

[1] The Court previously granted wA permission to serve Defendant Tumi Max via email at tumi993354@protonmail.com. (Dkt. 18). A copy of this Motion, the [Proposed] Order, and all supporting documents is being served on Defendant concurrently with the filing of the same, and a proof of service will be promptly filed with the Court.

123655147.5

(i.e., streams) licensed television shows and movies that first air in Korea. Defendant, on the other hand, offers an illegitimate competitor service called KOKOATV (hereinafter, the "KOKOA service"), available at KOKOATV.NET and KOKOA.TV (collectively, the "Domain Names"), which offers the same programming as wA's legitimate KOCOWA® service but free of charge and without any right to do so. In this action, wA has brought claims of trademark infringement and cybersquatting based on a likelihood of confusion between wA's KOCOWA mark and Defendant's KOKOA mark and copyright infringement based on Defendant's offering of Korean-originating television shows that have been exclusively licensed to wA for streaming in the United States. Despite being aware of this litigation and the pending Motion for Entry of Default Judgment, Defendant has declined to appear in this action to defend its KOKOA service or dispute wA's detailed allegations against it. Further, because default has been entered against Defendant Tumi Max (Dkt. 23), "the factual allegations of the complaint ... will be taken as true." *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

**B.  Defendant's Recent Campaign to Popularize its KOKOA Service Necessitates this Motion**

wA recently discovered that in December 2023, while wA's Motion for Entry of Default Judgment was pending, Defendant undertook a substantial publicity campaign to legitimize its illegitimate KOKOA service. By this concerted campaign, Defendant is attempting to drive users to the KOKOA service, including even those users that would otherwise be deterred from using the KOKOA by perceiving it to be "too good to be true." These very recent actions by Defendant will substantially increase and expedite the flow of users away from wA's legitimate KOCOWA® service to the illegitimate KOKOA service. Accordingly, wA is requesting entry of a temporary restraining order to prevent the real and substantially increased harm that will come to its KOCOWA® service if the KOKOA is allowed to operate while wA's Motion for Entry of Default Judgment is pending.

In more detail, on January 28th, counsel for wA conducted an Internet search to determine the status of KOKOATV.NET. (Declaration of Kyle W. Kellar In Support of

Plaintiff's Motion for Temporary Restraining Order ("Kellar Decl."), ¶2).  wA's counsel discovered that numerous Internet articles were published in December 2023 on websites publicizing and praising Defendant's KOKOA service. (*Id.*, ¶¶3–6, Exs. A–D). Given the substantial similarity between the articles, it appears that they were all prepared by or published by the same person or entity—likely Defendant or someone acting in concert with Defendant[2].

One articles states that "Kokoa TV is a hot new streaming service" and "If one loves watching movies and series, then one should give it a try." (*Id.*, Ex. A). Another article falsely states that "KokoaTV is a legal and inexpensive way to watch Korean dramas, comedies, and movies online" and that "KokoaTV provides legitimate access to Korean entertainment…." (*Id.*, Ex. B). Another article alleges that "Kokoa TV has made a name for itself with its stellar lineup of original content" including The Queen's Gambit, Stranger Things, and The Crown, each of which are well-known to be Netflix original programming. (*Id.*, Ex. C). These troubling articles are a clear attempt to publicize and legitimize Defendant's illegitimate KOKOA service to draw in even more consumers, including those consumers that would otherwise be hesitant to use the "too good to be true" free KOKOA service, to wA's immediate and direct detriment.

Evidencing the recent increase in KOKOA's popularity, wA's counsel discovered a recent instance of actual confusion between Defendant's KOKOA mark and wA's KOCOWA mark on an Internet forum where a Roku user posted a question about "Kokoatv" while the answer addressed "Kocowa." (*Id.*, ¶7, Ex. E). wA's counsel also found another instance of a consumer asking about "subscription passes for WAVVE / TVING[3]" with the top response suggesting that "you can always go legal but for another choice. https://kokoatv.net/" demonstrating that Defendant's KOKOA service has become the predominate illegitimate competitor to wA's KOCOWA® service. (*Id.*, ¶8, Ex. F).

---

[2] Even if these articles were not published by Defendant, they demonstrate a very recent and substantial increase in the popularity of Defendant's KOKOA service sufficient to present an immediate threat to wA's KOCOWA® service that did not exist prior to December 2023.

[3] The reference to "WAVVE / TVING" is an apparent reference to pending merger of Wavve, wA's parent company, and Tving.

123655147.5

1  Moreover, similarweb.com[4] states that KOKOATV.NET had a 41.34% increase in Internet
2  traffic compared to last month.  (*Id*., ¶9, Ex. G).

3        Due to this recent and substantial increase in the popularity of Defendant's KOKOA
4  service, and the attempt to whitewash it as a legitimate service offering licensed content,
5  wA brings this temporary restraining order to prevent the substantial and increasing harm
6  to wA's reputation and business until the Court can consider its pending Motion for Entry
7  of Default Judgment.  (*See* Declaration of Jeongphil Joo In Support of Plaintiff's Motion
8  for Entry of Temporary Restraining Order With Notice, ¶¶1–4).

## II.    STATEMENT OF FACTS

### A.    wA's KOCOWA® Service and Intellectual Property Rights

wA is the leading distributor of Korea-originating television programming and feature films in the United States, which it streams to viewers through its popular KOCOWA® service. (Dkt. 13 ("FAC"), ¶¶11–12).  wA licenses media content from, *inter alia*, the three largest broadcast networks in Korea—Korean Broadcasting System (KBS), Seoul Broadcasting System (SBS), and Munhwa Broadcasting Corporation (MBC).[5]  (*Id.*, ¶13–14).  wA is currently the exclusive licensee of the United States distribution rights to over 1,100 different programs owned by KBS, SBS, and MBC, which is distributes (i.e., streams) via its KOCOWA® service.  (*Id.*, ¶14; Joo Default Judgment Decl., ¶4, Ex. A).  wA generates revenue by a combination of placing ads in free video streams and by charging users a recurring subscription fee.  (FAC, ¶15).

#### 1.    wA's Trademark Rights

The name KOCOWA® is a backronym generated from the phrase "**KO**rean **CO**ntent **WA**ve" and has no separate meaning in English or Korean and has no dictionary definition. (*Id.*, ¶16).  At issue here is wA's U.S. Trademark Registration No. 6,183,377, registered on October 27, 2020, (the "Kocowa Mark") for video streaming services via the Internet.  (*Id.*,

---

[4] wA cannot attest to the accuracy of the analytics provided by similarweb.com.

[5] wA is a joint partnership between Content Wavve, SK Telecom, KBS, MBC, and SBS. (https://corp.kocowa.com/about-wa/; Declaration of Jeongphil Joo in Support of Plaintiff's Motion for Entry of Default Judgment (Dkt. 24-10 ("Joo Default Judgment Decl.")), ¶¶1–2).

123655147.5

LEWIS ROCA
201 East Washington Street, Suite 1200
Phoenix, AZ 85004

¶18, Ex. H (Dkt. 13-8)).  Further, wA owns and operates the KOCOWA.COM domain name, through which it provides information about, accepts subscriptions to, and provides an on-line version of its KOCOWA® service.  (*Id.*, ¶20).  Although Korean-language programming is increasingly popular in the United States, wA relies heavily on word-of-mouth referrals from its registered users to friends and family to increase its subscriber base, particularly because the KOCOWA® service caters to non-native English speakers or non-English speakers in that it provides Korea-originating, Korean-language content.  (*Id.*, ¶17).

### 2. wA's Exclusive Rights in Copyrighted Works

wA is the exclusive licensee of the United States distribution rights to over 1,100 different programs owned by the three largest Korean broadcast networks—KBS, SBS, and MBC (the "copyrighted Works").  (*Id.*, ¶13–14; Joo Default Judgment Decl., ¶4, Ex. A).  The copyrighted Works are first published in Korea and are later made available on wA's KOCOWA® service for viewing in the United States.  (FAC, ¶13 and 86).

### B. Defendant's Infringing Conduct

Tumi Max is leading a sophisticated piracy campaign leveraging infringement of both wA's exclusive distribution rights in the copyrighted Works and wA's trademark rights to create the KOKOA service, which is an entirely free (albeit illegal), direct competitor to wA's legitimate KOCOWA® service.  (*Id.*, ¶21–57).  First, Tumi Max selected the domain names KOKOATV.NET and KOKOA.TV[6] due to their confusing phonetic and visual similarity to wA's registered Kocowa Mark.  (*Id.*, ¶¶46, 50, and 80).  Indeed, in light of the target market for both wA's KOCOWA® service and Tumi Max's competing KOKOA service—non-native English speakers and non-English speakers—this type of phonetic and visual similarity, used in the same manner to distribute the same Korea-originating content is particularly effective in confusing consumers and diverting subscribers away from wA's legitimate KOCOWA® service.  (*Id.*, ¶¶47–49, 73, 53, and 94).

The FAC lists, as only a few examples (reproduced below as paragraph 10 to the Kellar Decl.), ten Korea-originating television shows, owned by either KBS, SBS, or MBC

---

[6] KOKOA.TV simply redirects to KOKOATV.NET.  (*Id.*, ¶21).

123655147.5

- 5 -

and exclusively licensed to wA for distribution in the United States that are also available, without permission, on Defendant's KOKOA service. (*Id.*, ¶52). A complete list of programs owned by one of KBS, MBC, and SBS and exclusively licensed to wA for distribution in the United States as of June 30, 2023, is attached as Exhibit A to the Joo Default Judgment Decl., previously filed at Dkt. 24-1.

Tumi Max has developed a sophisticated copyright piracy operation in the KOKOA service. (*Id.*, ¶¶25–38).[7] For example, Defendant's KOKOATV.NET web page hosts so-called "deeplinks" to the infringing content, which are then streamed to the viewer from one of a few "spoof" domains. (*Id.*, ¶¶28–32). Thus, rather than streaming from the KOKOATV.NET domain directly, the infringing works are streamed to the viewer from a different "spoof" domain name, such as SFOODTV.COM, DICECAKE.COM, GAMEJUICY.COM, and JUSTLINK.TV. (*Id.*, ¶¶31–35). Frustrating efforts to remove this infringing content, a user attempting to access the "spoof" domain directly, i.e., by entering the web address into the URL bar of an Internet browser, is taken to an innocuous webpage unrelated to the infringing content. (*Id.*, ¶¶31–33). The only known way to access the infringing works is via the deeplinks hosted on KOKOATV.NET. (*Id.*, ¶36).

### III.  ARGUMENT

To receive a temporary restraining order or preliminary injunction[8], the moving party "must establish that it is likely to succeed on the merits, it is likely to suffer irreparable harm in the absence of immediate relief, the balance of equities tips in its favor, and a TRO serves the public interest." *Buchanan Bros. Inc. v. A2Z Xtreme Airgun, LLC*, No. CV-23-01879-PHX-DLR, 2023 WL 6038159, at *2 (D. Az. Sept. 15, 2023). "These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another." *Id.*

---

[7] After the filing of this suit, it was discovered that KOKOATV.NET is geoblocked in Korea. (Declaration of Kyle W. Kellar in Support of Plaintiff's Motion for Entry of Default Judgment ("Kellar Decl."), ¶1). It is believed that this is intentional to prevent the copyright owners from becoming aware of the infringements.

[8] "The standards for issuing a TRO are identical to those for issuing a preliminary injunction." *Buchanan Bros. Inc.*, 2023 WL 6038159 at *2 (citing *Whitman v. Hawaiian Tug & Barge Corp./Young Bros., Ltd. Salaried Pension Plan*, 27 F.Supp.2d 1225, 1228 (D. Haw. 1998)).

123655147.5

### A. **wA is Likely to Succeed on its Trademark Infringement and Unfair Competition Claims**

wA's first and third Counts are claims for federal trademark infringement and federal unfair competition, respectively. (FAC, ¶¶71–77 and 93–98). "The Ninth Circuit has acknowledged that claims for trademark infringement [and] unfair competition under federal law ... are all subject to the same legal standards." *Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, No. 2:20-CV-04310-ODW (KSx), 2022 WL 3908831 at *3 (C.D. Cal. Aug. 30, 2022) (internal quotations and citations omitted).

"A person shall be liable in a civil action by a registrant owner of a mark if that person, without consent, uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.'" *Atlatl Grp. LLC v. Unknown Parties,*, No. CV-20-01199-PHX-DJH, 2023 WL 2596100,*2 (D. Ariz. Mar. 22, 2023) (quoting 15 U.S.C. § 1114(1)(a)). "To prevail on its trademark infringement claim, [Plaintiff] must show that: (1) it has a valid, protectable trademark, and (2) that [Defendant's] use of the mark is likely to cause confusion." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

As to the first point, the Complaint sets forth the identity of Plaintiff's valid, protectable KOCOWA mark, registration number 6183377, includes a copy of the federal registration, and describes Plaintiff's use of the KOCOWA mark in connection with, *inter alia*, video streaming services via the Internet. (FAC, ¶¶12–18, 20, and 72, Dkt. No. 13-8)[9]. As to the second point, likelihood of confusion, the Complaint describes the origin of Plaintiff's KOCOWA mark as an arbitrary backronym of "**KO**rea **CO**ntent **WA**ve," rendering it conceptually strong. *Debell Windows Systems, Inc. v. Dabella Exteriors, LLC*,

---

[9] Exhibit B to the Kellar Decl. is a recent printout from the USPTO Trademark Electronic Search System (TESS) confirming that Plaintiff wavve Americas, Inc. is the current owner of trademark registration number 6183377. See *Bhasin v. Pathak*, No. EDCV 13-00293-VAP, 2013 WL 1871508 at *2 (C.D. Cal. May 3, 2013) (taking judicial notice of records on USPTO website, as they were public records).

123655147.5

Case No. 3:20-cv-00420-MMD-WGC, 2020 WL 5632958 at *7 (D. Nev. Sept. 21, 2020) (finding the subject mark "arbitrary" and, thus, "conceptually strong"). Further, the parties' services are nearly identical, offering the same Korea-originating programming, targeting the same non-English or non-native English-speaking users over the Internet. (FAC, ¶¶17, 40, 43–48).

Moreover, Defendant's KOKOA mark is a phonetic and visual imitation of Plaintiff's KOCOWA mark, pronounced KO-KO-A versus KO-CO-WA. (*Id.*, ¶¶39, 46, 48–50); *Debell Windows Systems*, 2020 WL 5632958 at *9 ("Courts consider sight, sound and meaning to determine the similarity of competing marks.") (quoting *One Indus., LLC v. Jim O'Neal Distributing*, 578 F.3d 1154, 1162 (9th Cir. 2009) (internal quotations omitted). For example, in *Debell Windows Systems*, the court found that the competing marks "are both visually and phonetically similar, and [] do not have dissimilar meanings, because both words lack any inherent meaning." *Debell Windows Systems*, 2020 WL 5632958 at *9. Such phonetic and visual similarly is particularly damaging here because both Plaintiff's KOCOWA® service and Defendant's KOKOA service are provide the *same* Korean-language content targeted to the *same* users, and because wA relies heavily on word-of-mouth referrals for new subscribers. (FAC, ¶¶17, 23, 40). Lastly, the Defendant intentionally selected the KOKOA mark and the KOKOA.TV and KOKOATV.NET domain names to trade off the goodwill associated with Plaintiff's Kocowa Mark. (FAC, ¶¶39, 75).

Thus, Defendant's unauthorized use of the KOKOA mark in the KOKOA.TV and KOKOATV.NET domain names and in connection with the online distribution (i.e., streaming) of the same Korean-originating and Korean-language programming available on Plaintiff's KOCOWA® service is likely to cause confusion, mistake, or to deceive customers into believing that Defendant's KOKOA service is, or is related to, Plaintiff's KOCOWA service. (FAC, ¶¶39, 73).

### B.     wA is Likely to Succeed on its Cybersquatting Claim

To prove "cyberpiracy" or "cybersquatting," a plaintiff must show "that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)).

As explained in the Complaint, Defendant registered, trafficked in, and/or used the domain names KOKOA.TV and KOKOATV.NET. (FAC, ¶79). As described above with respect to Counts I and IV, these domain names are confusingly similar to Plaintiff's registered Kocowa Mark at least because they are phonetically identical and visually similar to Plaintiff's Kocowa Mark. In the case of KOKOATV.NET, the generic acronym "TV" is added, but this does little, if anything, to dispel confusion, especially here where Plaintiff's service is related to TV programming. (FAC, ¶41); *ICON Health & Fitness Inc. v. pro form.com*, No. CV-15-01981-PHX-BSB, 2017 WL 4797794 at *6 (D. Ariz. Sept. 12, 2017), *report and recommendation adopted*, No. CV-15-1981-PHX-SMM (BSB), 2017 WL 4779216 (D. Ariz. Oct. 23, 2017) (quoting *DaimlerChrysler v. The Net, Inc.*, 388 F.3d 201, 206 (6th Cir. 2004)) ("[C]ourts have consistently found that slight differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant.") (internal quotations and citations omitted).

The Anti-Cybersquatting Consumer Protection Act lists nine factors a court may consider in determining if a defendant has a bad faith intent to profit from the mark. 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX). Most relevant here is factor five, which focuses on "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." 15 U.S.C. § 1125(d)(1)(B)(i)(V).

As set forth in the Complaint and described above, Defendant uses the domain names

KOKOA.TV and KOKOATV.NET to stream infringing copies of the copyrighted Works in violation of Plaintiff's exclusive rights to do the same. (FAC, ¶¶43–50, 81). By offering many of the same programs that are exclusively licensed to Plaintiff, for free and without limitation, Defendant is diverting customers from Plaintiff's online KOCOWA® service, available at KOCOWA.COM, to Defendant's competing KOKOA service, available at KOKOA.TV and KOKOATV.NET. (*Id.*, ¶¶49–50). Further, Defendant has placed numerous advertisements on the websites associated with the KOKOATV.NET domain name such that he receives "commercial gain" in the form of advertising revenue to Plaintiff's direct detriment. (*Id.*, ¶56). According to at least one source, Defendant's advertising has increased webtraffic to KOKOATV.NET by 43% month-over-month. (Kellar Decl., Ex. G). Accordingly, Defendant had a bad faith intent to profit from the domain names KOKOA.TV and KOKOATV.NET at least by intentionally diverting customers away from Plaintiff's legitimate KOCOWA® service to Defendant's illegitimate KOKOA service by intentionally using a confusingly similar variation of Plaintiff's Kocowa Mark in his domain names. (FAC., ¶¶49, 79–82).

C. **wA is Likely to Succeed on its Copyright Infringement Claim**

"To present a *prima facie* case of direct copyright infringement, a plaintiff must demonstrate: (1) ownership of the copyright at issue; (2) a violation of an exclusive right set forth in copyright, and (3) causation by the defendant; a plaintiff need not prove damages." *Fornix Holdings LLC v. Unknown Party*, No. CV-22-01942-PHX-DJH, 2023 WL 4031961 at *2 (D. Az. June 15, 2023) (citing *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1080 (9th Cir. 2021)). However, when a right under a copyright has been exclusively licensed, "only the exclusive licensee and not the original owner can sue for infringement of those rights." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013).

The copyrighted Works at issue in this case are owned by the three largest Korean broadcast networks—KBS, MBC, and SBS. (FAC, ¶14, 25, 51, and 52). Plaintiff is the exclusive licensee of the United States distribution rights in over 1,100 different programs

owned by KBS, MBC, and SBS (the "copyrighted Works"). (*Id.*) The Complaint lists, as a small example, ten of these Works. (*Id.*, ¶52); *see Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318-(GBD) (BCM), 2017 WL 696126 at *14 (S.D.N.Y. Feb. 15, 2017), *report and recommendation adopted sub nom. Joint Stock Co. v. Infomir LLC*, No. 16 Civ. 1318 (GBD) (BCM), 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) ("Where a copyright claim is based on the alleged wholesale infringement of a large number of copyrighted works, courts have relaxed this rule somewhat, but the plaintiff must still identify, at a minimum, representative examples of the works allegedly infringed...."). A complete list of the copyrighted Works, as of June 30, 2023, is attached to the Joo Default Judgment Decl. as Exhibit A, previously filed as Dkt. 24-1.

Defendant infringes Plaintiff's exclusive rights in the copyrighted Works by doing exactly what Plaintiff does through its KOCOWA® service, albeit without authorization. (FAC, ¶¶53, 87, and 88). That is, Defendant distributes (i.e., streams) unauthorized copies of the copyrighted Works over the Internet to viewers in the United States via his KOKOA service. (*Id.*, ¶¶53, 87, and 88).

While Plaintiff's rights in the copyrighted Works are undisputed, for completeness, relevant facets of the copyrighted Works, and Plaintiff's ownership of certain rights thereunder, are discussed below.

### 1. The Copyrighted Works Need Not Be Registered

Although United States works must be registered with the U.S. Copyright Office before an infringement action can commence, "the Berne Convention Implementation Act, 17 U.S.C. §§ 101, et seq., 'allows owners of unregistered foreign copyrights from Berne Convention signatory nations to bring claims of copyright infringement in United States courts.'" *Liaigre, Inc. v. California Furniture Collection, Inc.,* No. SA CV19-01160 JAK (KESx), 2022 WL 18278600 at *7 (C.D. Cal. Oct. 6, 2022) (quoting *MPD Accessories B.V. v. Urban Outfitters*, No. 12 CIV. 6501 LTS KNF, 2014 WL 2440683 at *5 (S.D.N.Y. May 30, 2014)). Each of the copyrighted Works is broadcast and publicly displayed in Korea by the respective copyright owner before it is distributed in the United States.

123655147.5

1  (FAC, ¶¶13, 86). Further, Korea has been a party to the Berne Convention since August 21, 1996. (*Id.*, ¶86). As such, the copyrighted Works are not United States works and are not subject to the registration requirements of 17 U.S.C. § 411(a). *See Crunchyroll, Inc. v. Pledge*, No. C 11-2334 SBA, 2014 WL 1347492 at *16 (N.D. Cal. Mar. 31, 2014) (television episodes first broadcast in Japan were not "United States work" and need not be registered).

### 2. wA Has Standing

"[T]o have standing to bring a copyright infringement claim, 'the plaintiff must have a legal or beneficial interest in at least one of the exclusive rights described in § 106,' and 'the infringement must be committed while he or she is the owner of the particular exclusive right allegedly infringed.'" *Crunchyroll*, 2014 WL 1347492 at *13 (quoting *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) (quoting 17 U.S.C. § 501(b)). The Copyright Act permits that the "exclusive rights may be chopped up an[d] owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right." *Id.* at *14 (quoting *Silvers*, 402 F.3d at 886–87). Such a transfer in ownership must be something other than a nonexclusive license and must be "in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." *Id.* at *14 (quoting 17 U.S.C. §§ 101 and 204(a)). "[T]here is no requirement for any 'magic words'" in the writing, however. *Id.* at *14 (quoting *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999)).

Although undisputed by Defendant, relevant portions of agreements between each of KBS, MBC, and SBS and Plaintiff providing the "[e]xclusive grant of content distribution and transmission business rights for OTT" in North America are submitted herewith. (Declaration of Kyle W. Kellar In Support of Plaintiff's Request for Entry of Default Judgment (Dkt. 22-1 ("Kellar Default Judgment Decl."), ¶¶5–7, Exs. D, F, H (Dkts. 24-4, 24-6, 24-8) (Article 3(1)(a))).

Nevertheless, even if these writings are deemed insufficiently specific, Plaintiff should not be precluded from establishing standing in this case. Plaintiff is a corporation

201 East Washington Street, Suite 1200
Phoenix, AZ 85004
LEWIS ROCA

123655147.5

that is owned and controlled, in part, by each of the three copyright owners—KBS, MBC, and SBS. (Joo Default Judgment Decl., ¶2; Kellar Default Judgment Decl., ¶¶5–7, Exs. C-H (Dkt. 24-3–24-8) (Article 2(1)–(2)). Further, each of KBS, MBC, and SBS has at least one member on wA's Board of Directors and expressly authorized Plaintiff to bring this suit. (Joo Default Judgment Decl., ¶3). Accordingly, there is no dispute between Plaintiff any of KBS, MBC, and SBS, the copyright owners, as to the validity of the transfer of exclusive rights to Plaintiff.

The Ninth Circuit has stated that "in situations in which the copyright holder appears to have no dispute with its licensee on [the issue of transfer], it would be anomalous to permit a third party infringer to invoke this provision against the licensee." *Crunchyroll*, 2014 WL 1347492 at *14 (quoting *Radio Television Espanola*, 183 F.3d at 929). Thus, even if the writings are deemed insufficient, such a finding should not preclude Plaintiff from asserting the copyright infringement claim since the copyright owners are each a stockholder of Plaintiff and expressly authorized this litigation. *See Crunchyroll*, 2014 WL 1347492 at *14 (permitting an exclusive licensee to maintain a copyright infringement claim despite a lack of any writing evidencing the purported transfer of rights).

Lastly, "[a]s a general matter, the law of the jurisdiction where an artistic work is created and first published governs issues concerning copyright ownership." *Liaigre,* 2022 WL 18278600 at *7 (internal quotations and citations omitted). Here, Korean copyright law would govern any issue regarding copyright ownership. As at least one other court has found that an exclusive transfer of distribution rights is permitted under Korean copyright law. *See Seoul Broadcasting System Int'l, Inc. v. Young Min Ro*, 784 F. Supp. 2d. 611, 616 (E.D. Va. 2011) (citing *Korean Copyright Act*, Articles 45–47 and 53–55) ("The Korean parent networks, in turn, then assigned to their United States affiliates, the plaintiffs in this case, all rights to distribute and rebroadcast the works in the United States. Under Korean copyright law, such transfers or assignments of copyrights are valid and fully enforceable, and plaintiffs have therefore adequately established standing to sue as a matter of law.") (internal citations omitted) As such, there can be no dispute (and there is none), that the

123655147.5

- 13 -

exclusive right to distribute the copyrighted Works in the United States was properly and validly transferred from the copyright owners to Plaintiff under Korean copyright law.

Thus, Plaintiff has standing to bring its copyright infringement claim.

### 3. United States Copyright Law Is Applicable To Defendant's Acts

While "United States copyright laws do not reach acts of infringement that take place entirely abroad," here, the infringement may begin abroad, likely in Thailand where Defendant resides, but culminates in the United States when the infringing shows are viewed by any number of individuals. Such infringement is not "wholly extraterritorial" as it is specifically directed to viewers in the United States and culminates in the United States, rendering the application of United States copyright law against Defendant proper. *See Crunchyroll*, 2014 WL 1347492 at *17 (finding acts resulting in viewing of copyrighted works by individuals in the United States sufficient to find the infringing conduct not "wholly extraterritorial"); *Sound N Light Animatronics Co. v. Cloud B, Inc.*, No. CV 16-05271-BRO (JPR), 2017 WL 3081685 at *7 (C.D. Cal. Apr. 7, 2017) (finding application of U.S. copyright law appropriate where the defendant's "allegedly infringing products, although manufactured in China, reached consumers in the United States"); *Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 915 (D.C. Cir. 2018) (holding application of U.S. copyright law proper because, *inter alia*, "Congress had good reason to allow domestic copyright holders to enforce their rights against foreign broadcasters who direct infringing performances into the United States ... [because] a statutory scheme that affords copyright holders no protection from such broadcasters would leave the door open to widespread infringement").

### D. Defendant's Infringements is Creating Presumptive and Real Irreparable Harm to wA and Consumers

As to the trademark infringement claim, because Plaintiff has presented unrebutted evidence that Defendant infringed and is currently infringing its Kocowa Mark, "under 15 U.S.C. § 1116(a), [Plaintiff] is therefore entitled to a presumption that it is being

123655147.5

- 14 -

irreparably harmed." *Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, No. 2:20-CV-04310-ODW (KSx), 2022 WL 3908831 at *6 (C.D. Cal. Aug. 30, 2022).  Further, Plaintiff's lost market share and goodwill are losses that cannot be quantified or adequately remedied by monetary damages.  Moreover, without entry of temporary restraining order, Defendant would be tacitly permitted to continue infringing Plaintiff's Kocowa Mark and to further attempt to increase its users through various forms of Internet publicity, such as the unfounded articles discussed in the Introduction.  Finally, unmitigated infringement, which Defendant has continued despite knowledge of this lawsuit, may tempt others to similarly infringe Plaintiff's Intellectual Property rights.

As to the copyright infringement claim, Plaintiff is and continues to suffer irreparable injury because, despite this lawsuit, Defendant continues to infringe Plaintiff's exclusive rights to distribute the copyrighted Works in the United States.  Further, Plaintiff's business relies on the licensing of Korea-originating copyrighted Works from their Korean owners for distribution to subscribers of its KOCOWA® service in the United States.  Defendant, by infringing Plaintiff's exclusive rights in the copyrighted Works by offering the same to anyone in the United States free of charge, and by purporting to do so legally[10] to entice otherwise law abiding users to unwittingly partake in copyright infringement, is directly undercutting Plaintiff's business model and risks Plaintiff's future success.  Lastly, Defendant's conduct is contrary to the law, and "the public interest is not disserved by prohibiting Defendant from engaging in conduct contrary to law." *Nicklaus Companies LLC v. Bryan Hepler Golf LLC*, No. CV-18-01748-PHX-ROS, 2019 WL 1227198 at *1 (D. Az. March 15, 2019).

### E.   The Balance of Hardships Tips Sharply in wA's Favor

wA seeks to have the Domain Names that facilitate Defendant's infringements disabled and locked for the pendency of this litigation.  Because Defendant's website does

---

[10] As explained in the Introduction, the recently published articles all attempt to present Defendant's KOKOA service as legitimate and offering licensed programming when it is illegitimate and offers countless unlicensed programs.  *See* Kellar Decl., Ex. A ("Licensed content can be accessed ... on this platform..."); Ex. B ("KokoaTV ... [offers] licensed Korean films and dramas..."); and Ex. C ("Kokoa TV ... lets you watch licensed TV shows and movies...").

123655147.5

not serve any legitimate, i.e., non-infringing, purpose, Defendant is not harmed by the loss of any ill-gotten gains from the infringements and the illegitimate use of the Domain Names. *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017) (discussing *"*the long-settled principle that harm caused by illegal conduct does not merit significant equitable protection"). Without an injunction, Defendant will continue to receive ill-gotten gains from the infringements while causing irreparable harm to wA's goodwill and business interests by offering the same programming available on a subscription basis on wA's KOCOWA® service for free via the Domain Names.

### F.  **Public Interest Favors Entry of a Temporary Restraining Order**

"In trademark infringement cases, the public interest is the right of the public not to be deceived or confused. Where [a] defendant's concurrent use of [a] plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use." *Kinsley Tech.*, 2022 WL 3908831 at *6. Similarly, because Defendant's conduct is contrary to the law, "the public interest is not disserved by prohibiting Defendant from engaging in conduct contrary to law." *Nicklaus Companies LLC v. Bryan Hepler Golf LLC*, No. CV-18-01748-PHX-ROS, 2019 WL 1227198 at *1 (D. Az. March 15, 2019). As such, there is no public harm in and, indeed, public interest favors, prohibiting Defendant's infringing conduct by disabling the Domain Names for the pendency of this litigation.

## IV.  **THE COURT HAS AUTHORITY TO DIRECT NON-PARTY NAMECHEAP TO BLOCK THE DOMAIN NAMES**

Namecheap states on its website that "No, you do not need to name Namecheap ... in a legal action"[11] and states, as part of its Registration Agreement, that "We will comply with court orders unless [the registrant] contact[s] us to contest the order."[12] wA understands these statements made by Namecheap mean that Namecheap consents to abide by any Court Order without needing to be a named party. Indeed, courts in this district have directed non-party domain name registrars to lock or block certain domain names in

---

[11] https://www.namecheap.com/legal/general/court-order-and-subpoena-policy/ (accessed Jan. 30, 2024)
[12] https://www.namecheap.com/legal/domains/registration-agreement/ (accessed Jan. 30, 2024)

123655147.5

similar circumstances. *See Alpha-Pharma Healthcare Pvt. Ltd. v. MakeQR.co.in*, No. CV-23-01542-PHX-ROS, Order Granting Mtn. for Prelim. Injunction, ECF No. 26 (D. Ariz. Oct. 2, 2023) ("Pending further Order of this Court, nonparty GoDaddy.com, LLC, shall lock or take other appropriate action regarding the domain name....").

Nevertheless, a court "may issue a TRO against non-party entities who have an agency relationship with a party or who otherwise 'are in active concert or participation' with a party." *Fornix Holdings v. Unknown Party*, No. CV-22-00494-PHX-DLR, 2022 WL 992546, at *2 (D. Ariz, Mar. 1, 2022) (quoting Fed. R. Civ. Proc. 65(d)(2)(B)–(C)). Here, wA repeatedly made Namecheap aware of Defendant's infringements occurring on and via the Domain Names prior to the filing of this litigation, including on April 27, 2023 (Dkt. 13-30), June 15, 2023 (Dkt. 13-33), and June 26, 2023 (Dkt. 13-35). Subsequent to the filing of this litigation, wA served a copy of the original Complaint (Dkt. 1) on Namecheap in connection with wA's requested expedited discovery via email on September 1, 2023, and Namecheap confirmed receipt that same day. (Kellar Decl., ¶¶11-12, Exs. H and I). Then, on January 29, 2024, while this Motion was being prepared, counsel for wA emailed a copy of the [Proposed] Order to Namecheap along with an email describing wA's intent to move for entry of a temporary restraining order. (*Id*., ¶13, Ex. J). Finally, wA will be serving a courtesy copy of this Motion on Namecheap and will file a proof of service with the Court so that Namecheap is fully apprised of wA's request and has an opportunity to be heard.

Because Namecheap has repeatedly been made aware of Defendant's infringing conduct on the Domain Names and has elected to take no action, and because NameCheap has been made aware of this litigation generally and this Motion specifically, the Court has sufficient authority to bind non-party Namecheap as stated in the attached [Proposed] Order.

## V. CONCLUSION

For the foregoing reasons, wA respectfully requests that the Court enter an order in the form of the [Proposed] Temporary Restraining Order accompanying this application.

123655147.5

Dated: February 2, 2024

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By:   */s/Kyle W. Kellar*
     Kyle W. Kellar
     Ryan D. Pont

*Attorneys for Plaintiff wavve Americas, Inc.*

123655147.5